**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. THOMAS AND ST. JOHN**

**UNITED STATES OF AMERICA**

**v.**

**DHRUVKUMAR PATEL,**

        **Defendant.**
_____

3:25-cr-00070-RAM-EAH

**TO:**    Denise George, Esq., AUSA
          Jason Gonzalez-Delgado, Esq.

## MEMORANDUM OPINION

**THIS MATTER** came before the Court on a bench trial held on December 9, 2025. Defendant Dhruvkumar Patel was represented by Attorney Jason Gonzalez-Delgado, and the Government was represented by Assistant United States Attorney Denise George. The Government charged Mr. Patel by Information with Illegal Entry by an Alien, in violation of 8 U.S.C. § 1325(a)(1). *See* Dkt. No. 18. The Court took the matter under advisement. For the reasons that follow, the Court finds that the Government met its burden of proving Mr. Patel's guilt beyond a reasonable doubt. Accordingly, the Court finds Mr. Patel **GUILTY** on Count One of the Information, Illegal Entry by an Alien.

## BACKGROUND

At trial, the parties waived opening arguments. The Government first called Mohamad Adiq Biradar, a certified interpreter with Lionbridge, a telephonic interpretation service, who testified that he translated the interview between the law enforcement agents and Mr. Patel on September 26, 2025, the day that Mr. Patel was arrested. That interview was video recorded and was admitted into evidence as Government's Exhibit 4.

*United States v. Patel*
3:25-cr-00070-RAM-EAH
Memorandum Opinion
Page 2

The Government then called three agents who had been involved in the apprehension, arrest, and interview of Mr. Patel: Kervin Williams, an agent with Immigration & Customs Enforcement ("ICE"); John Gumbs, a Special Agent with Customs & Border Protection ("CBP"); and Christopher Lovejoy, a Special Agent with Homeland Security Investigations ("HSI"), all of whom worked on St. Thomas. Agent Williams testified that, on September 26, 2025, he received a tip from another law enforcement agent that a group of persons were being moved from St. Thomas to Culebra, Puerto Rico, and they would be traveling in a grey Acura. The person who gave him the tip mentioned that the people in the car were from Venezuela, the Dominican Republic, Brazil, or India. Agent Williams contacted Agents Gumbs and Lovejoy because he believed that the matter might involve smuggling, trafficking, and may have an immigration nexus.

The officers gathered, conducted surveillance, spotted the vehicle and pursued it. Upon intercepting the vehicle, Agent Williams approached the driver, noting that there were 4-5 people in the car. Per ICE's modus operandi, he asked if anyone in the vehicle had status to be in the United States, explaining to the Court that ICE follows that protocol so as not to take U.S. citizens into custody. Agent Williams also explained on cross-examination that when he asked Mr. Patel whether he had legal status to be in the United States, he answered "no" in English, which Agent Williams viewed as Mr. Patel understanding enough English to respond to the question he asked. Having determined that the four passengers were undocumented aliens, they were taken into custody. Agent Williams transported Mr. Patel and another person to the ICE Office and turned them over to HSI. Agent Williams ran

*United States v. Patel*
3:25-cr-00070-RAM-EAH
Memorandum Opinion
Page 3

immigration data searches to verify that Mr. Patel was out of status in the United States and learned that Mr. Patel had a detainer lodged against him and a pending asylum application.

Agent Gumbs testified that he received information from ICE that a grey Acura on St. Thomas was transporting immigrants to a boat that was going to Culebra; his understanding was that the individuals were illegal immigrants. Once the agents located and stopped the car, he spoke to the driver, who told him he was a U.S. citizen, while Agent Lovejoy spoke with the four passengers. After transporting two of the individuals to the ICE Offices, he conducted a number of systems checks on Department of Homeland Security ("DHS") databases[1] regarding Mr. Patel's status in the United States. He learned that Mr. Patel had no immigration status, although he had a pending application for asylum. In response to a question about Mr. Patel's citizenship, Agent Gumbs stated he possessed Mr. Patel's physical passport that had been seized from his backpack showing that he was s citizen of India, which matched the information in the databases. He added that none of the reports showed that Mr. Patel made a lawful entry into the United States at any time through an authorized Virgin Islands port of entry on St. Thomas (Cyril King Airport and Blyden Terminal) or St. John (Cruz Bay), that he never presented himself for inspection by CBP (where he would provide necessary documents to the officers), and that no visa had been issued to him. Agent Gumbs and Agent Lovejoy were present at Mr. Patel's videotaped interview. After asking for Mr.

---

[1] Agent Gumbs testified that, in order to use the DHS databases, an agent inputs his credentials to gain access to the system in order to make queries. A number of the databases are shared among USCIS, CPB, and HSI. He then inputs the alien's name and date of birth and the various programs provide reports showing, inter alia, the alien's law enforcement encounters with HSI

*United States v. Patel*
3:25-cr-00070-RAM-EAH
Memorandum Opinion
Page 4

Patel's personal history, Agent Gumbs saw Agent Lovejoy read Mr. Patel his Miranda rights, and saw Mr. Patel sign the form waiving his Miranda rights. *See* Gov't Ex. 9.

Agent Lovejoy testified that he received a call from Agent Williams regarding a tip about a vehicle picking up migrants on St. Thomas to transport them to a boat to be taken off island. He responded with Agent Gumbs to locate the vehicle, and he assisted in conducting the encounter. Upon stopping the vehicle, he asked what country the passengers were citizens of and whether they had legal documents to be in the United States. He was unable in the field to determine whether they were properly documented in the United States. They transported the individuals to the ICE Office where he assisted in the video interview with Mr. Patel. While Mr. Patel understood a little English, he did not understand enough to conduct the interview in English, so Agent Lovejoy contacted Lionbridge, HSI's contract translator company, seeking an interpreter who spoke Mr. Patel's language, Gujurati. Lionbridge provided a translator who assisted in the interview by translating the Agents' questions into Gujurati and translating Mr. Patel's responses into English. Agent Lovejoy videorecorded the interview. After Agent Gumbs obtained his personal history—name, date of birth, address, where he and his parents were from—Agent Lovejoy—through the translator—Mirandized him, reading line by line from a form, Gov't Ex. 9. Mr. Patel waived his Miranda rights, and signed the form, as did Agents Gumbs and Lovejoy. Gov't Ex. 9.

Agent Lovejoy asked a number of questions during the video interview, including Mr. Patel's country of citizenship. Mr. Patel responded that he was a citizen of India. As to whether he had applied for a visa or had any other legal documents showing that he was

*United States v. Patel*
3:25-cr-00070-RAM-EAH
Memorandum Opinion
Page 5

permitted to be in the United States. Mr. Patel admitted on the videotape that he did not file any documents with the U.S. Citizenship & Immigration Services ("USCIS") that would allow him to be present in the United States, such as a visa, and stated he knew he entered the country illegally when he came to the U.S. in October 2024. Mr. Patel explained why he travelled to the United States—to work—and how he did so—eventually arriving on St. John on a boat from St. Martin and then traveling to St. Thomas on the ferry.[2] According to Agent Lovejoy, the facts surrounding his arrival were not consistent with arrival at a designated port of entry on St. John. The Government then played in court that part of the interview where Mr. Patel admitted he had not applied for a visa or received any documents allowing him to enter the United States legally and his admission that he understood he entered the country illegally.

The final Government witness was Jodi Luntsford, the Director of USCIS's Field Office in Charlotte Amalie, St. Thomas. Her office adjudicates immigration requests from people outside the United States and addresses applications for benefits (such as green cards, citizenship, asylum, work authorization). The USCIS is also the custodian of physical and digital immigration records that contain information on any applications or petitions filed by an alien and any of their law enforcement interactions. Director Luntsford asserted that asylum is a benefit, and a petition for asylum did not give an alien a right to be in the United States. In other words, applying for asylum did not cure an unlawful entry; if a person was

---

[2] In the videotaped interview, Mr. Patel said a person was supposed to pick him up when he arrived on the boat from St. Martin to St. John, but no one was there, so he went to St. Thomas on the ferry himself.

*United States v. Patel*
3:25-cr-00070-RAM-EAH
Memorandum Opinion
Page 6

running from danger, they were still required to enter the United States at a designated port of entry. From her review of the USCIS records, Director Luntsford asserted that Mr. Patel had applied for asylum in January 2025, and his application was pending. He also received a work permit.

The Government rested, after which the Defendant rested, calling no witnesses and offering no exhibits.

In closing, the Government asserted that it had shown Mr. Patel was an alien, as there were no records on any systems checks showing that he possessed the rights of a citizen or permanent resident, and there was no authorization for him to be in the U.S. He himself admitted in the videotaped interview that he had no documents to authorize him to be in the United States, that he came on a boat to St. John and knew his entry was illegal. Agent Gumbs explained what a port of entry was, where a person's credentials were checked and passport stamped if they came legally. But Patel's passport was not stamped. While he did apply for asylum two months after he entered the country, that application was still pending. But asylum does not excuse a person's behavior in entering illegally. Work authorization is given when you apply for asylum, but it is unrelated to whether a person entered unlawfully. The Government has proven the elements of unlawful entry.

The Defendant's attorney asserted that seventeen days before Mr. Patel was arrested, he was provided with a right to work in the United States and contribute to the economy. He sought to build a life in the United States on one hand and was arrested on the other. Even though he may have entered illegally, he was doing everything he could remain legally in the

*United States v. Patel*
3:25-cr-00070-RAM-EAH
Memorandum Opinion
Page 7

United States. Counsel asked that Mr. Patel's asylum request be adjudicated before his being deported if the request was not granted.

The Court took the matter under advisement.

## DISCUSSION

### I.     The Crime of Illegal Entry

Title 8, Section 1325(a)(1) provides:

> Any alien who enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall, for the first commission of any such offense, be fined under title 18 or imprisoned not more than 6 months, or both[.]

8 U.S.C. § 1325(a)(1). The Immigration and Nationality Act ("INA"), of which 8 U.S.C. § 1325 is a provision, defines "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). "Immigration officer" is defined as "any employee or class of employees of the Service,[3] or of the United States designated by the [Secretary of Homeland Security], individually or by regulation, to perform the functions of an immigration officer." 8 U.S.C. § 1101(a)(18). Virtually any DHS official whose duties relate in some way to immigration activities qualifies as an "immigration officer."[4]

---

[3] The INA was signed into law before DHS existed, when the Immigration and Naturalization Service, an agency in the Department of Justice, oversaw most immigration-related issues. Parts of the statute still refer to the Immigration and Naturalization Service, or "the Service."

[4] A separate regulation defines "immigration officer" to mean:

> the following employees of the Department of Homeland Security, including senior or supervisory officers of such employees, designated as immigration officers authorized to exercise the powers and duties of such officer as specified by the Act and this chapter I: aircraft pilot, airplane pilot, asylum

*United States v. Patel*
3:25-cr-00070-RAM-EAH
Memorandum Opinion
Page 8

In *United States v. Sajous*, No. 3:25-cr-00036, 2025 WL 2097261 (D.V.I. July 25, 2025), this Court confronted the fact that § 1325(a) was silent as to any *mens rea* requirement. The Court concluded that it was not a strict liability offense but that the presumptive intent that attached to criminal charges, "knowing," applied to § 1325(a). *Id.* at *8. The Court held that the Government must prove that the defendant (1) is an alien; (2) who knowingly entered the United States at any time or place other than as designated by immigration officers

According to the Third Circuit's Model Jury Instructions (Criminal), a person acts knowingly if he

> acts voluntarily and intentionally and not because of mistake or accident or other innocent reason. This means that the government must prove beyond a reasonable doubt that the Defendant was conscious and aware of the nature of her actions and of the surrounding facts and circumstances, as specified in the definition of the offense charged." When considering whether a defendant acted "knowingly," the factfinder "may consider evidence about what the Defendant said, what the Defendant did and failed to do, how the Defendant acted, and all the other facts and circumstances shown by the evidence that may prove what was in [the Defendant's] mind at that time.

Third Cir. Model Crim. Jury Instr., § 5.02, https://www.ca3.uscourts.gov/model-criminal-

---

officer, refugee corps officer, Border Patrol agent, contact representative, deportation officer, detention enforcement officer, detention officer, fingerprint specialist, forensic document analyst, general attorney (except with respect to CBP, only to the extent that the attorney is performing any immigration function), helicopter pilot, immigration agent (investigations), immigration enforcement agent, immigration information officer, immigration inspector, immigration officer, immigration services officer, investigator, intelligence agent, intelligence officer, investigative assistant, special agent, other officer or employee of the Department of Homeland Security or of the United States as designated by the Secretary of Homeland Security as provided in 8 CFR 2.1.

8 C.F.R. § 1.2.

*United States v. Patel*
3:25-cr-00070-RAM-EAH
Memorandum Opinion
Page 9

jury-table-contents-and-instructions, last visited 10/22/2025 (citation modified); *see also United States v. Dixon*, 548 U.S. 1, 5 (2006) ("As we have explained, unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense.") (citation modified).

## II. Application

### A. Whether Mr. Patel is an Alien

The first element of a § 1325(a)(1) violation that the Government must prove beyond a reasonable doubt is whether Mr. Patel is an alien. As indicated above, the INA defines an alien as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). The most salient evidence on this factor comes from the responses Mr. Patel gave to Agents Lovejoy and Gumbs in the videotaped interview that was entered into evidence as Gov't Ex. 4. When Agent Lovejoy asked him what country he was a citizen of, Mr. Patel responded "India." This answer comports with Agent's Gumbs's testimony in which he reviewed Mr. Patel's passport that showed that he was a citizen of India, as well as DHS records that also showed Mr. Patel's Indian citizenship. Accordingly, the Government has proved beyond a reasonable doubt that Mr. Patel is an alien, thereby satisfying the first element of § 1325(a)(1).

### B. Whether Mr. Patel Knowingly Entered the United States at Any Time or Place Other Than as Designated by Immigration Officers

Once again, the best evidence showing that Mr. Patel knowingly entered the United States at any time or place other than as designated by immigration officials is his own statement in response to a question from Agent Lovejoy during the videotaped interview.

*United States v. Patel*
3:25-cr-00070-RAM-EAH
Memorandum Opinion
Page 10

Mr. Patel admitted that he did not have legal documents to be in United States and stated that he knew he entered the country illegally in October 2024 when he came by boat from St. Martin to St. John. Agent Lovejoy testified that Mr. Patel's description about how he arrived on St. John was not consistent with arrival at a designated port of entry. All of the Department of Homeland Security databases that Agents Williams and Gumbs searched contained no record of Mr. Patel's entry at a port of entry on St. John (Cruz Bay) or St. Thomas (Cyril King Airport or the Blyden Ferry Terminal) and inspection by CBP agents: the databases showed no entry at the United States border. As a result, Agents Williams, Gumbs and Lovejoy determined that Mr. Patel's entry into the United States was illegal, based on the absence of such records. In fact, the records revealed that Mr. Patel did not encounter any of the three divisions of the Department of Homeland Security (USCIS, CBP, ICE) until two months after his entry—in January 2025—when he submitted an asylum application. And as Director Luntsford made clear, the fact that Mr. Patel had a pending asylum application did not automatically serve to confer on him any immigration status or benefit. In other words, the pending application did not retroactively legalize the fact that he entered the United States at a time and place other than as designated by immigration officers. Given Mr. Patel's statement in the videotaped interview that he knew he entered the United States illegally, the Government proved this second element of illegal entry, 8 U.S.C. § 1325(a)(1) beyond a reasonable doubt.[5]

---

[5] It is reasonable to infer that most people understand that they cannot cross an international border without presenting required documentation and without speaking to and being given

*United States v. Patel*
3:25-cr-00070-RAM-EAH
Memorandum Opinion
Page 11

## CONCLUSION

For the reasons set forth above, the Court hereby **FINDS** that Mr. Patel is **GUILTY** of Count One of the Information, entering the United States at a time and place other than as designated by an immigration officer in violation of 8 U.S.C. § 1325(a)(1).

ENTER:

Dated: December 16, 2025

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE

---

permission to enter by immigration authorities. If the person did not do so, it is also reasonable to infer that they were seeking to avoid an encounter with those immigration authorities. Once Mr. Patel crossed an international border from St. Martin into St. John, he did not make any attempt to ensure that his entry was lawful by contacting any authorities. Rather, he remained in the United States for over two months, unknown to the authorities, until he filed an asylum application.